# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| KYLE BEEBE<br>Plaintiff, | §<br>§<br>§ | Civil Action No. 1:19-cv-00545-JHR-JFR<br><br>**JURY TRIAL REQUESTED** |
| v. | §<br>§ | |
| JOHN TODD<br>Defendant. | §<br>§<br>§ | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT REGARDING MEDICAL CAUSATION AND MEMORANDUM IN SUPPORT

Respectfully submitted,

**FERNELIUS SIMON MACE ROBERTSON PERDUE, PLLC**

By:   */s/ Ryan M. Perdue*
Stephen M. Fernelius
New Mexico Bar No. 152675
CAID No. 19325
Email: steve.fernelius@trialattorneytx.com
Ryan M. Perdue
New Mexico Bar No. 152728
CAID No. 19393
Email: ryan.perdue@trialattorneytx.com
4119 Montrose Blvd, Suite 500
Houston, Texas 77006
Telephone: (713) 654-1200
Facsimile: (713) 654-4039

**ATTORNEYS FOR DEFENDANT JOHN TODD**

1

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing was served on all counsel of record pursuant to the Federal Rules of Civil Procedure on the 14th day of April, 2020.

                                               */s/ Ryan M. Perdue*
                                               Ryan M. Perdue

## TABLE OF CONTENTS

I. Summary Judgment Evidence .................................................................................... 6
II. Undisputed Material Facts ........................................................................................ 7
III. Summary of Argument ............................................................................................ 11
IV. Summary Judgment Standard ................................................................................. 12
V. Argument ................................................................................................................ 13
   A. Plaintiff cannot establish causation, an essential element of his personal injury action .. 13
   B. Due to his failure to timely disclose expert witnesses and expert reports, Plaintiff is now precluded from offering medical causation testimony ..................................................... 16
VI. Conclusion .............................................................................................................. 19

# LIST OF AUTHORITIES

**CASES**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) .......................................................... 12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................... 12

*Bacchhus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887 (10th Cir. 1991) ................................. 12

*Buchanan v. Downing*, 74 N.M. 423 (1964) .................................................................. 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 12

*Cervantes v. Forbis*, 73 N.M. 445 (1964) .................................................................. 13

*Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999 (N.D. Cal. 2012) ............... 16

*Duke v. Garcia*, 2014 WL 1333151 (D.N.M. Feb. 28, 2014) .................................... 11, 14, 15, 17

*Eck v. Parke, Davis & Co.*, 256 F.3d 1013 (10th Cir. 2001) .......................................... 12

*James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207 (10th Cir. 2011) .......................... 17

*Montoya v. Sheldon,* 286 F.R.D. 602 (D.N.M. 2012) .......................................... 16, 17, 18

*Rael v. F & S Company, Inc.*, 94 N.M. 507 (Ct. App., 1979) ............................................. 14

*Sanchez v. Molycorp, Inc.*, 103 N.M. 148 (Ct. App. 1985) ........................................... 13

*State v. Newman*, 109 N.M. 263 (Ct. App. 1989) ........................................................... 13

*Sturgeon v. ABF Freight Sys., Inc.*, 2004 WL 5872664 (D.N.M. Jan. 14, 2004) ......................... 18

*Witherspoon v. Navajo Ref. Co., L.P.*, 2005 WL 5988650 (D.N.M. June 28, 2005) ..................... 17

*Woods v. Brumlop*, 71 N.M. 221 (1962) ..................................................................... 13

**RULES**

Fed. R. Civ. P. 56 ............................................................................................................. 6

Fed. R. Civ. P. 26(a)(2)(A) ........................................................................................... 16

Fed. R. Civ. P. 26(a)(2)(B) ........................................................................................... 16

Fed. R. Evid. 701 ......................................................................................................... 17

Pursuant to Federal Rule of Civil Procedure 56, Defendant, John Todd ("Todd"), hereby submits this Motion for Summary Judgment and Memorandum in Support ("Motion"). Summary judgment is appropriate because Plaintiff, Kyle Beebe ("Plaintiff"), cannot establish that the car accident giving rise to this lawsuit caused his alleged injuries and damages. Because Plaintiff cannot establish medical causation, a key element of his claim, summary judgment is appropriate as a matter of law.

## I.   SUMMARY JUDGMENT EVIDENCE

In support of this Motion, Todd includes evidence in the attached exhibits, which are incorporated by reference in this Motion. This Motion is based on the following evidence:

| | |
|---|---|
| Exhibit 1 | Plaintiff's Complaint for Damages |
| Exhibit 2 | Plaintiff's Answers to Defendant John Todd's First Set of Interrogatories and Requests for Production to Plaintiff Kyle Beebe |
| Exhibit 3 | Excerpts from Plaintiff's Deposition Transcript |
| Exhibit 4 | Amended Order Adopting Joint Status Report and Provisional Discovery Plan with Changes and Setting Case Management Deadlines |
| Exhibit 5 | Report of Defendant's retained medical expert Dr. G. Theodore Davis |
| Exhibit 6 | May 5, 2016, Medical Report from Lake Chiropractic |
| Exhibit 7 | May 5, 2016, Medical Record from Animas Surgical Hospital |
| Exhibit 8 | May 13, 2016, X-Ray Report from Animas Urgent Care |
| Exhibit 9 | May 13, 2016, Radiology Report from Animas Surgical Hospital |
| Exhibit 10 | June 20, 2016, Medical Record from Animas Surgical Hospital |
| Exhibit 11 | October 24, 2016, Medical Office Note from Animas Surgical Hospital |
| Exhibit 12 | December 19, 2016, Progress Note from Animas Surgical Hospital |
| Exhibit 13 | January 18, 2017, Medical Record from Animas Surgical Hospital |

| | |
|---|---|
| Exhibit 14 | April 11, 2017, Medical Office Note from Animas Surgical Hospital |
| Exhibit 15 | June 8, 2017, Radiology Report from Animas Surgical Hospital |
| Exhibit 16 | July 13, 2017, Medical Office Note from Animas Surgical Hospital |
| Exhibit 17 | August 25, 2017, Progress Note from Animas Surgical Hospital |
| Exhibit 18 | November 14, 2017, Radiology Reports from Animas Surgical Hospital |
| Exhibit 19 | February 9, 2018, Medical Office Note from Animas Surgical Hospital |
| Exhibit 20 | Affidavit of Ryan M. Perdue |

## II.   UNDISPUTED MATERIAL FACTS

1. Plaintiff alleges that on May 5, 2016, he was driving southbound on US 550 in the City of Cedar Hill, San Juan County, New Mexico.[1] He claims that Todd attempted to make a left hand turn into the northbound lane of US 550, and in doing so pulled his vehicle into the oncoming path of Plaintiff, causing a collision.[2]

2. Plaintiff's Complaint alleges that "as a direct and proximate cause of [Todd's] negligence," he generally suffered bodily injuries requiring medical treatment, pain and suffering, interference with and loss of enjoyment of life, and "other nonmedical losses that may extend into the future."[3]

3. More specifically, Plaintiff alleges that he suffered a lower back and hip injury, as well as "aggravation of a hernia."[4] He states that he has "difficulty in sitting for long periods, bending, standing for long periods" and that he has had "fairly constant pain due to injury."[5] At his January 16, 2020 deposition, Plaintiff testified that his pain has been "constant" and "very consistent" ever

---

[1] Ex. 1, Plaintiff's Complaint for Damages at ¶5.
[2] Ex. 1, Plaintiff's Complaint for Damages at ¶6.
[3] Ex. 1, Plaintiff's Complaint for Damages at ¶¶9-11.
[4] Ex. 2, Plaintiff's Answers to Defendant John Todd's First Set of Interrogatories and Requests for Production to Plaintiff Kyle Beebe at Interrogatory No. 9.
[5] Ex. 2, Plaintiff's Answers to Defendant John Todd's First Set of Interrogatories and Requests for Production to Plaintiff Kyle Beebe at Interrogatory No. 9.

since the May 5, 2016, accident.[6]

4. Pursuant to this Court's case management order, Plaintiff was required to disclose his expert witnesses no later than February 14, 2020.[7]

5. Plaintiff has not disclosed experts or medical providers who will offer expert testimony concerning causation, pursuant to Federal Rules of Evidence 702, 703, or 705. Nor has he timely produced any Fed. R. Civ. P. 26(a)(2) expert disclosures or reports.

6. The medical providers who have treated Plaintiff since the accident are Animas Surgical Hospital, Lake Chiropractic, PC, MRMC/Centura Health, Radiology Associates of Durango, Reliance Medical Group, LLC, Southwest Colorado Spine (Animas Spine), Spine Colorado, and Three Springs Imaging, LLC.[8]

7. Plaintiff has not disclosed, pursuant to Fed. R. Civ. P. 26(a)(2), that any of the medical providers listed above will offer expert testimony about causation at trial.

8. Despite the fact that Plaintiff has received extensive medical treatment and undergone a wide array of diagnostic evaluations since the accident, his medical providers have been unable to provide any definitive diagnosis or explanation for Plaintiff's subjective complaints.[9]

9. On the day of the accident, Plaintiff was seen at Lake Chiropractic and reported having reported pain complaints in various body areas (e.g., both shoulders, right anterior hip region, mid back, posterior neck, trapezius muscle, sacroiliac areas, etc).[10] The chiropractic note stated that Plaintiff "is of good health and is expected to make good progress and recovery with few

---

[6] Ex. 3, Plaintiff's Deposition Transcript at pp. 77-78.
[7] Ex. 4, Amended Order Adopting Joint Status Report and Provisional Discovery Plan with Changes and Setting Case Management Deadlines (Doc. 38).
[8] Ex. 2, Plaintiff's Answers to Defendant John Todd's First Set of Interrogatories and Requests for Production to Plaintiff Kyle Beebe at Interrogatory No. 10.
[9] *See generally*, Ex. 5, Report of Defendant's retained medical expert Dr. G. Theodore Davis at p. 20 ("Although it is not precisely clear what condition(s) plaintiff may have that accounts for his difficulties and the course-of-care and the cost-of-care evident from review of the medical records, the motor vehicle collision is not the cause.")
[10] Ex. 6, May 5, 2016, Medical Report from Lake Chiropractic.


residuals."[11]

10.     Plaintiff was also evaluated later on the day of the accident at Animas Surgical Hospital by David Alcindor, MD, for complaints related to pain in the abdominal region.[12]  To assess this complaint, a physical examination was conducted along with diagnostic imaging studies.[13]  The clinical examination findings were benign, without objective signs of injury, and the ultrasound studies of the abdominal organs were entirely normal and revealed no evidence of injury.[14]

11.     On May 13, 2016 (eight days after the incident), Plaintiff received an X-Ray to his lumbar spine and pelvis at Animas Urgent Care.[15]  The X-ray was completely normal, showing no fractures or subluxations (i.e. dislocations).[16]  He also had a CT scan of his abdomen and pelvis, which also showed no acute osseous injury and no hernia.[17]  It was noted that he had a "thin, curvilinear calcified body within the left hip joint…likely related to an old injury vs chondrocalcinosis."[18]

12.     On June 20, 2016, Plaintiff was seen by James Pitts, PA-C at Animas Surgical Hospital, who would become one of his primary treaters (under the supervision of David Silva, D.O.).[19]  Mr. Pitts diagnosed Plaintiff with a lumbar strain and abdominal contusion, and he prescribed several rounds of physical therapy and chiropractic treatment.[20]

13.     After Plaintiff continued to complain of low back pain, he was seen again by Mr. Pitts on October 24, 2016, who noted that "At this point, we are 5 months into his case…I feel like if this

---

[11] Ex. 6, May 5, 2016, Medical Report from Lake Chiropractic.
[12] Ex. 7, May 5, 2016, Medical Record from Animas Surgical Hospital.
[13] Ex. 7, May 5, 2016, Medical Record from Animas Surgical Hospital.
[14] Ex. 7, May 5, 2016, Medical Record from Animas Surgical Hospital.
[15] Ex. 8, May 13, 2016, X-Ray Report from Animas Urgent Care.
[16] Ex. 8, May 13, 2016, X-Ray Report from Animas Urgent Care.
[17] Ex. 9, May 13, 2016, Radiology Report from Animas Surgical Hospital.
[18] Ex. 9, May 13, 2016, Radiology Report from Animas Surgical Hospital.
[19] Ex. 10, June 20, 2016, Medical Record from Animas Surgical Hospital.
[20] Ex. 10, June 20, 2016, Medical Record from Animas Surgical Hospital.

was muscular he would have done really well and made sufficient progress, however, this does not specifically represent muscular injury in my opinion…I believe his principal problem is facet injury."[21]

14.     On December 19, 2016, Plaintiff again saw Mr. Pitts still complaining of low back pain.[22] Mr. Pitts' assessment at that visit was "abdominal contusion and lumbosacral strain with likely underlying pathology most likely disk related."[23] Mr. Pitts therefore recommended that Plaintiff undergo an MRI of his lumbar spine.[24] Plaintiff had a lumbar MRI which showed some early degenerative changes at L4-5 and L5-S1, as well as facet joint changes, but no disk herniations.[25]

15.     After continued complaints or low back pain and various failed modalities of conservative treatment, Plaintiff returned to Mr. Pitts on April 11, 2017.[26] After reviewing his MRI, Mr. Pitts noted:

> There is mild facet hypertrophy at L4-5 and there was some evidence on the original MRI of sacroiliitis in the right and I believe that there is a component of that is causing his pain today. I am not convinced that a pathologic event occurred in the structure of a vertebral complex…I am concerned for a pars defect that may have developed over time that we are not privy to, but I do believe that would have shown up on an MRI in December. ***It is baffling to me at some point, to not be able to get him to get better. Most conditions at this point would have already resolved themselves with this amount of time***.[27]

16.     Plaintiff then received an MRI of his pelvis on June 8, 2017.[28] The radiology report noted that Plaintiff's sacrum appeared to demonstrate "the sequelae of old trauma (i.e. bone contusion).[29] This could be very early unilateral sacroiliitis *from a variety of causes*."[30] Otherwise, the MRI

---

[21] Ex. 11, October 24, 2016, Medical Office Note from Animas Surgical Hospital.
[22] Ex 12, December 19, 2016, Progress Note from Animas Surgical Hospital.
[23] Ex 12, December 19, 2016, Progress Note from Animas Surgical Hospital.
[24] Ex 12, December 19, 2016, Progress Note from Animas Surgical Hospital.
[25] Ex. 13, January 18, 2017, Medical Record from Animas Surgical Hospital.
[26] Ex. 14, April 11, 2017, Medical Office Note from Animas Surgical Hospital.
[27] Ex. 14, April 11, 2017, Medical Office Note from Animas Surgical Hospital.
[28] Ex. 15, June 8, 2017, Radiology Report from Animas Surgical Hospital.
[29] Ex. 15, June 8, 2017, Radiology Report from Animas Surgical Hospital
[30] Ex. 15, June 8, 2017, Radiology Report from Animas Surgical Hospital.

was "unremarkable."[31]

17.     Plaintiff returned to Mr. Pitts on July 13, 2017, with continued complaints of pain.[32]  In the note from this examination, Mr. Pitts stated "***It is difficult to assess specifically what causes his pain***…"[33]  Similarly, following another examination on August 25, 2017, Mr. Pitts opined that "at this point, ***I am not sure as to what is the cause of his pain***."[34]

18.     On November 14, 2017, Plaintiff underwent additional radiographs at Animas Surgical Hospital to his sacroiliac joints and his lumbar spine.[35]  The radiology report for the sacroiliac joints found, "Asymmetrical right sacroiliitis, similar to prior studies.[36]  ***This could be due to a variety of causes*** including psoriatic arthritis, reactive arthropathy, gout arthritis or asymmetric ankylosing spondylitis."[37]  The radiology report for the lumbar spine found "no acute osseous findings in the lumbar spine" and "mild asymmetric sacroiliitis of the right SI joint ***which could be due to a variety of causes*** including reactive arthritis, psoriatic arthritis, [or] gout."[38]

19.     Plaintiff was seen at Animas Surgical Hospital for the final time on February 9, 2018.[39]  Mr. Pitts stated "at this point, I do not recommend any further medical treatment interventions because he has not responded to any so far."[40]

20.     Despite continuing to complain of low back pain and seek treatment from other medical providers at least through January 2019, no medical provider has been able to offer any concrete diagnosis for Plaintiff's subjective complaints.  Dr. G. Theodore Davis, who is a board-certified

---

[31] Ex. 15, June 8, 2017, Radiology Report from Animas Surgical Hospital.
[32] Ex. 16, July 13, 2017, Medical Office Note from Animas Surgical Hospital.
[33] Ex. 16, July 13, 2017, Medical Office Note from Animas Surgical Hospital.
[34] Ex. 17, August 25, 2017, Progress Note from Animas Surgical Hospital.
[35] Ex. 18, November 14, 2017, Radiology Reports from Animas Surgical Hospital.
[36] Ex. 18, November 14, 2017, Radiology Reports from Animas Surgical Hospital.
[37] Ex. 18, November 14, 2017, Radiology Reports from Animas Surgical Hospital.
[38] Ex. 18, November 14, 2017, Radiology Reports from Animas Surgical Hospital.
[39] Ex. 19, February 9, 2018, Medical Office Note from Animas Surgical Hospital.
[40] Ex. 19, February 9, 2018, Medical Office Note from Animas Surgical Hospital.

physician and medical expert consultant retained by Defendant John Todd, reviewed Plaintiff's medical records and provided an expert report in this case.[41] Dr. Davis agreed with Plaintiff's treating physicians that pinpointing a medical cause of Plaintiff's complaints remains a mystery:

> Although it is not precisely clear what condition(s) plaintiff may have that accounts for his difficulties and the course-of-care and the cost-of-care evident from review of the medical records, the motor vehicle collision is not the cause. There would be no medical basis for plaintiff's treating physician(s) not to refer him for an appropriate medical specialty evaluation to clarify the diagnosis, and no medical basis for plaintiff not to seek such an evaluation, should he wish to do so.[42]

21. Dr. Davis concluded in his report that whatever medical condition is causing Plaintiff's difficulties, it is something that is currently undiagnosed:

> A condition or conditions presently undiagnosed but also unrelated to the collision are the likely explanation for his subjective complaints and difficulties. Any subsequent and appropriate diagnostic evaluations and / or treatments for his current condition(s) are unrelated to the motor vehicle collision.[43]

22. Accordingly, Plaintiff has no admissible evidence showing a causal connection between his alleged injuries and the May 5, 2016, motor vehicle accident.

### III.   SUMMARY OF ARGUMENT

Defendant is entitled to summary judgment because Plaintiff cannot prove that the May 5, 2016, motor vehicle accident caused his alleged injuries and damages. In order to meet his burden of proof, Plaintiff is required to present expert testimony to establish medical causation. This particularly true in this case, where (1) Plaintiff's alleged medical problems have "multiple potential etiologies," and (2) Plaintiff's action involves "medically complicated" injuries. *See Duke v. Garcia*, 2014 WL 1333151 (D.N.M. Feb. 28, 2014).

Despite the requirement that he present expert testimony on medical causation, Plaintiff

---

[41] Ex. 5, Report of Defendant's retained medical expert Dr. G. Theodore Davis.
[42] Ex. 5, Report of Defendant's retained medical expert Dr. G. Theodore Davis at p. 20.
[43] Ex. 5, Report of Defendant's retained medical expert Dr. G. Theodore Davis at p. 21.

failed to timely disclose any expert witnesses or produce any expert reports as required by the Federal Rules of Civil Procedure and this Court's scheduling order.  As a result, Plaintiff is now precluded from offering any medical causation testimony.  Therefore, Plaintiff cannot meet his Rule 56 burden on medical causation, and summary judgment on all of his damages claims must be granted.

## IV.SUMMARY JUDGMENT STANDARD

In summary judgment proceedings filed pursuant to Rule 56, the burden of establishing the absence of a material question of fact is on the movant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The movant can discharge that burden by showing that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material fact. *See Bacchhus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  Plaintiff may not rest on his pleadings; instead, he must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which they carry the burden of proof. *Celotex Corp.*, 477 U.S. at 324. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Ordinarily, what constitutes the proximate cause of any injury is a question of fact." *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1023 (10th Cir. 2001) (internal citation omitted). "However, the question of proximate cause becomes a question of law *when the facts are undisputed and there is no evidence from which a jury could reasonably find a causal connection between the allegedly [tortious] act and the injury.*" *Id*. (emphasis added).

## V. ARGUMENT

### I. Plaintiff cannot establish causation, an essential element of his personal injury action

In New Mexico, it is well-settled that the plaintiff bears the burden of proof of establishing medical causation, and that the plaintiff is generally required to present expert testimony to prevail on the issue of medical causation when it is necessary to properly inform the jurors on the issues. *See State v. Newman*, 109 N.M. 263, 270, 784 P.2d 1006, 1013 (Ct. App. 1989) (J. Hartz concurring) ("Thus, courts ordinarily do not permit juries to draw a conclusion regarding medical diagnosis or medical causation without expert testimony directly supporting the conclusion. Indeed, it is generally required that the expert medical witness testify to his or her conclusion to a 'reasonable medical probability,' or words of similar import.") (citing *Poertner v. Swearingen*, 695 F.2d 435 (10th Cir. 1982) and *Zerr v. Trenkle*, 454 F.2d 1103 (10th Cir.1972)), *see also e.g., Woods v. Brumlop*, 71 N.M. 221, 225, 377 P.2d 520 (1962) ("[T]he cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion."); *Sanchez v. Molycorp, Inc.*, 103 N.M. 148, 152, 703 P.2d 925, 929 (Ct. App. 1985) ("Causation exists within a reasonable medical probability when a qualified medical expert testifies as to his opinion concerning causation and in the absence of other reasonable causal explanation, it becomes more likely than not that the injury was a result of its action.").

Therefore, summary judgment is routinely granted in favor of defendants where the plaintiff fails to offer expert testimony establishing proximate cause. *See, e.g., Buchanan v. Downing*, 74 N.M. 423, 394 P.2d 269 (1964) (summary judgment for defendant is appropriate where plaintiff failed to offer any expert testimony establishing that his condition was, to a reasonable degree of medical probability, proximately caused by defendant); *Cervantes v. Forbis*, 73 N.M. 445, 389 P.2d 210 (1964) (summary judgment properly granted to defendants where

plaintiff failed to offer expert testimony to establish causal connection between injury and defendants' alleged acts); *Rael v. F & S Company, Inc.*, 94 N.M. 507, 511-12, 612 P.2d 1318, 1322-23 (Ct. App., 1979), cert. quashed 94 N.M. 675, 615 P.2d 992 (1980) ("to justify an instruction for future pain and suffering, it was necessary for the Plaintiff to present evidence by a medical expert that these headaches were caused by the accident and that they would continue into the future, and for the expert to present some reasonably certain proof as to the severity and duration with which they would occur.").

The United States District Court for the District of New Mexico has reiterated the same conclusion. In *Duke v. Garcia*, 2014 WL 1333151 (D.N.M. Feb. 28, 2014), the court addressed the question of when expert testimony is required to establish medical causation. The court noted that while there may be "exceptional circumstances" where the issue of causation is within the understanding of a lay person and expert testimony is not required, there are two key situations where expert testimony is absolutely required to establish causation. *Id*. at * 2. First, "[W]hen there is no obvious origin to an injury and it has 'multiple potential etiologies [i.e. causes], expert testimony is necessary to establish causation." *Id*. at * 2 (citing *Myers v. Ill. Cent. R.R. Co*., 629 F.3d 639, 643 (7th Cir.2010.)). Second, "actions involving 'medically complicated' injuries require expert testimony on causation." *Id*. at * 3 (citing *Savage v. Pilot Travel Ctrs., L.L.C*., 464 F. App'x 288, 290 (5th Cir.2012)). Because there was both "uncertainty and complexity surrounding Plaintiff's alleged injury" the court concluded that it was not an "exceptional circumstance" where medical causation is "within common experience or knowledge of the layman." *Id*. Thus, the court held that expert testimony was required, and since "Plaintiff has not designated an expert before the deadline, the Court must grant summary judgment to Defendants on the issue of medical causation." *Id*.

In the instant case, Plaintiff must provide expert testimony regarding causation which establishes with reasonable medical probability that his alleged injuries and damages were caused by the May 5, 2016, accident. First, it is clear there is "no obvious origin" to his medical condition and it has "multiple potential etiologies." See *id* at * 2. Over the nearly four years since the accident, no doctor has been able to provide him a definitive, concrete diagnosis for his subjective complaints of pain. His medical providers have made the following comments regarding Plaintiff's condition, which are direct quotes from the medical records:

- "It is difficult to assess specifically what causes his pain…"[44]
- "At this point, I am not sure as to what is the cause of his pain."[45]
- "This could be due to a variety of causes…"[46]

Additionally, there have been numerous potential etiologies that have been offered as possible explanations for Plaintiff's complaints, including facet syndrome, a pars defect, sacroiliitis, psoriatic arthritis, reactive arthritis, rheumatoid arthritis, gout, ankylosing spondylitis, and hypointense bone marrow.[47] In short, Plaintiffs' medical providers have acknowledged through Plaintiff's medical records that there is "no obvious origin" for his problems.

Furthermore, this action clearly involves a "medically complicated" case. *See id*. at * 3. Plaintiff's own medical providers have admitted that they are "baffled" by his lack of any progress.[48] Thus, because there is both uncertainty and complexity surrounding Plaintiff's medical situation, he is required to present expert testimony to establish medical causation within a reasonable degree of medical probability.

---

[44] Ex. 16, July 13, 2017, Medical Office Note from Animas Surgical Hospital.
[45] Ex. 17, August 25, 2017, Progress Note from Animas Surgical Hospital.
[46] Ex. 18, November 14, 2017, Radiology Reports from Animas Surgical Hospital.
[47] *See generally*, Ex. 5, Report of Defendant's retained medical expert Dr. G. Theodore Davis; Ex. 11, October 24, 2016, Medical Office Note from Animas Surgical Hospital; Ex. 18, November 14, 2017, Radiology Reports from Animas Surgical Hospital.
[48] Ex. 14, April 11, 2017, Medical Office Note from Animas Surgical Hospital.

**II. Due to his failure to timely disclose expert witnesses and expert reports, Plaintiff is now precluded from offering medical causation testimony**

A pre-requisite to offering expert testimony at trial is the filing of proper expert disclosures under Rule 26(a)(2). A party intending to present expert testimony must disclose the identity of the witness to all other parties. *See* Fed. R. Civ. P. 26(a)(2)(A). If the witness is one "retained or specifically employed to provide expert testimony in the case…" the party calling such a witness, must provide a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them…" Fed. R. Civ. P. 26(a)(2)(B). Alternatively, if the expert witness is not required to provide a written report, the party calling the witness must produce a disclosure containing "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C) (emphasis added). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Rule 26(a)(2)(C), thus, unequivocally mandates that a party must disclose the "facts and opinions" to which an expert will testify, even if that expert is not required to issue a report. Fed. R. Civ. P. 26(a)(2)(C). The underlying purpose of this rule is to "place the opposing party on notice of the expert's opinions to enable them to determine what areas to explore with the expert, as well as to determine whether to designate rebuttal experts." *Cotton ex rel. McClure v. City of Eureka, Cal.*, 860 F. Supp. 2d 999, 1023 (N.D. Cal. 2012). When a party fails to properly disclose a witness as an expert, the witness's testimony is limited by the confines of Rule 701 of the Federal Rules of Evidence. *See Montoya v. Sheldon*, 286 F.R.D. 602, 612 (D.N.M. 2012) (holding that "[a] witness not properly identified as an expert pursuant to Rule 26 of the Federal Rules of Civil Procedure may thus testify as a lay witness…").

16

Under Rule 701, treating physicians are simply not allowed to offer opinion testimony based on their technical and scientific experience as physicians. *See Montoya*, 286 F.R.D. at 612 ("Rule 701 no longer permits a treating physician to offer "any opinions . . . based on . . .experience as a physician.") (quoted authority and internal citations omitted).  This is because "Rule 701 does not permit a lay witness to express opinion as to matters which are beyond the realm of common experience and which require special skill and knowledge of an expert witness." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (quoting *Randolph v. Collectramatic, Inc*., 590 F.2d 844, 846 (10th Cir. 1979)) (internal quotations omitted). Thus, a "treating physician testifying as a lay witness cannot testify to any opinions regarding causation under rule 701, because opinions regarding causation of a medical condition require 'knowledge derived from precious professional experience[, which] falls squarely within the scope of Rule 702…'" *Montoya*, 286 F.R.D. at 613 (quoting *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d at 1215).

Moreover, in the United States District Court for the District of New Mexico, it is well settled that a party who fails to timely disclose testifying experts and Rule 26 expert reports is not permitted to rely upon treating physicians for causation opinions. *See Duke v. Garcia*, 2014 WL 1333151 (D.N.M. Feb. 28, 2014) at n. 4 ("Notably, unless offered and qualified as an expert, a treating physician 'may not provide testimony beyond the scope of her treatment of plaintiff and [the physician's] conclusions must fall within the province of a lay witness.'") (citing *Montoya v. Sheldon*, 286 F.R.D. 602, 613 (D.N.M.2012)); s*ee also Witherspoon v. Navajo Ref. Co., L.P*., 2005 WL 5988650, at *2 (D.N.M. June 28, 2005) (concluding that a treating physician, not disclosed under Rule 26(a)(2), could not testify to "any causation opinions drawn."). If a plaintiff fails to designate Rule 26 experts and further fails to provide expert reports, then the plaintiff's treating

physicians are limited in the type of testimony they can provide at trial. *See Sturgeon v. ABF Freight Sys., Inc.*, 2004 WL 5872664, at *3 (D.N.M. Jan. 14, 2004). Treating physician testimony is therefore limited to discussing their interaction, treatment and medical condition based only on the timeframe when the patient was treated by that doctor. *Id*.

Plaintiff's deadline to designate expert witnesses in this case was February 14, 2020.[49] Because Plaintiff failed to designate any testifying expert witnesses on the issue of medical causation, failed to include any Rule 26 expert reports on the issue of medical causation, and even failed to designate his treating doctors as experts regarding causation, he is precluded from presenting the evidence which is necessary to prove that the facts alleged in the Complaint caused any of his alleged injuries. *See Montoya*, 286 F.R.D. at 613. Plaintiff's medical providers cannot offer testimony on anything beyond their treatment –such as causation testimony– under the rule established in *Montoya* since such opinion testimony is clearly based on "knowledge derived from precious professional experience, [which] falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701." *Id*.

Plaintiff has failed to produce evidence establishing causation in this case. Moreover, Plaintiff's failure to timely designate an expert who can testify about causation at trial has precluded him from establishing causation with medical probability. Plaintiff, as a result, cannot meet his Rule 56 burden on medical causation. Therefore, summary judgment on all of his damages claims related to his alleged personal injury must be granted.

---

[49] This was actually the second instance in this case where Plaintiff failed to disclose any expert witnesses in accordance with this Court's orders. Under the Court's original Order Setting Case Management Deadlines, Plaintiff's initial expert disclosure deadline was September 30, 2019. *See* August 1, 2019, Order Adopting Joint Status Report and Provisional Discovery Plan with Changes and Setting Case Management Deadlines (Dkt No. 11). After Plaintiff failed to disclose any experts in accordance with that initial scheduling order, the parties filed a joint motion to vacate the then-existing deadlines, so that both parties would be able to properly disclose their experts. *See* Stipulated Motion to Vacate Deadlines (Dkt. No. 28). Thus, Plaintiff has demonstrated a pattern of failing to comply with his expert disclosure obligations.

## VI. CONCLUSION

For the foregoing reasons, Defendant John Todd respectfully requests that this Court grant its motion and enter summary judgment against Plaintiff, and award any such other and further relief as this Court deems just and proper.